## KNOWLTON v. TILTON.

Assumpsit cannot be maintained to recover money due upon a contract under seal, unless there has been a waiver, abandonment, or rescinding of the contract.

By contract under seal, one party leased to the other a paint shop connected with his carriage manufactory, for one year, for the rent of forty dollars, to be paid in painting. The lessee covenanted to pay the rent in painting, but without a stipulation as to the time the work should be done; and also covenanted to paint the carriages and sleighs manufactured by the lessor, at certain specified prices, within a reasonable time after they should be delivered to him, and the lessor covenanted to pay whatever might be due to the lessee for painting on the first days of certain specified months, within the year.—*Held*, that the amount due for painting, on each of the specified days of payment, was to be determined by deducting from the whole amount of the work done between that and the next preceding day of payment, the proportion of the rent which accrued during that time, at the rate of forty dollars for the year.—*Held*, also, that an action, brought on one of the days of payment, on account of the work done between that and the next preceding day, was premature, although preceded by a demand made on that day.

ASSUMPSIT. The writ was dated May 1, 1855. The first count was *quantum meruit*, for labor and materials; the second, for money had and received; and the third, upon an account annexed.

The account consisted of two parts: first, for labor by the day, from May 26, 1852, to April 5, 1853. No question arises on this part of the account. The other part consisted of charges for painting done under the contract, a copy of which is annexed, and makes a part of this case. The items of the charges began November 25, 1854, and ended April 21, 1855. There was an off-set filed, but it contained no charge for rent. The case had been referred to an auditor, who made his report, allowing the plaintiff for that part of his account which was for labor done under said contract, about $145. He also allowed the defendant about $215 in off-set, and found due to the plaintiff about $235 on the whole account, besides interest. It did

not appear in evidence that the plaintiff had performed any labor for the defendant under the contract after April 21, 1855, but it did appear that the defendant took possession of the shop mentioned in said contract, on the 17th day of May, 1855. The defendant took the following exceptions, viz: 1. That the action could not be maintained for that part of the account which was for labor done under the contract, without showing a rescinding, waiver or abandonment of the contract, but the action should have been on the contract. The court overruled the exception. Nothing was said in this connection about the effect of the auditor's report, nor did the defendant offer any evidence to impeach the finding or the breach of the contract. 2. That for that part of the account which became due May 1, 1855, the action, if it could be otherwise sustained, was premature, as no action could be brought thereon till the 2d day of May; or if it could be, not without a previous demand. The court overruled the exception, holding that the action was well brought without a demand; but if a previous demand was necessary, the auditor's report was a *prima facie* evidence that it had been made, and of any fact necessary to be proved before him, to justify his finding, and it was incumbent on the defendant to negative the same. 3. The defendant claimed that the whole rent of the shop for the year should be deducted from the plaintiff's account. The plaintiff consented that the rent for half the year might be deducted. On this point the court instructed the jury that the rent, by the terms of the contract, did not become due till the end of the year; but as the contract was to endure only a year, and the rent was to be paid in the same kind of work which the plaintiff was to perform under the contract, it was competent for them to find that a part of the work was done in payment of the rent; and they might find that enough of the work was done in this way to pay the whole rent, or a part of it, as they believed the fact to be, and deduct from the

plaintiff's account accordingly. The jury deducted one half year's rent. There was no evidence offered by either party on this part of the plaintiff's claim, except the auditor's report.

The jury found a verdict for the plaintiff for the amount found due by the auditor, on the several branches of the account, deducting $20 for rent. To the foregoing rulings and instructions to the jury the defendant excepted.

"ARTICLES OF AGREEMENT, indented, made and concluded the sixth day of November, A. D. 1854, between Nathan C. Tilton, of Pittsfield, in the county of Merrimack and State of New-Hampshire, and Charles T. B. Knowlton, of the same Pittsfield.

The said Nathan C. Tilton, for the consideration of forty dollars, doth hereby lease to said Charles T. B. Knowlton a certain paint shop, with the appurtenances, situate in said Pittsfield, and being the second story of the building now occupied by said Tilton as a carriage shop. To have and to hold the same for the term of one year from the thirteenth day of November, 1854. And the said Tilton further covenants and agrees that said Knowlton shall have the privilege of using the paint-mills and cans, draws and desk, now in said shop, free of any charge or expense.

And the said Charles T. B. Knowlton doth hereby covenant and agree to pay the aforesaid rent of forty dollars, in painting for said Tilton; and also to return said paint-mills, cans, draws and desk at the expiration of said term, in as good condition as the same now are, excepting the ordinary wear of the same. And said Knowlton further agrees to paint said Tilton's carriages for the prices hereinafter mentioned, and to do said painting within a reasonable time after said carriages are delivered to him.

And said Tilton agrees to pay said Knowlton whatever may be due him for painting, on the first days of January, March, May, July, September and November, during said term.

---
Knowlton *v.* Tilton.
---

And it is further agreed by the parties that the prices for painting shall be as follows :

Painting wagons, without rough coating or extra finish, $8.00; painting wagons, with rough coating and extra finish, $10; painting sleighs, striped with colors, ornamented well, $7; painting sleighs, gold leaf stripe, ornamented well, and rough coated, $9; painting sleighs, high colors, gold leaf stripe, ornamented rich, $12.

And said Tilton agrees that said Knowlton shall have the privilege of making any alterations in said paint-shop, provided the same may not materially injure said building.

In witness whereof we have hereunto set our hands and seals, the day and year herein first written.

N. C. TILTON.      [Seal.]
C. T. B. KNOWLTON.   [Seal.]

Signed, sealed and delivered
      in presence of
    LEWIS W. CLARK."

*L. W. Clark*, for the plaintiff.

*Leavitt*, for the defendant, as to the point that assumpsit did not lie, but the action should have been debt or covenant, cited 1 Chitty 99; 1 Saund. Plead. & Ev. 164; 2 Gr. Ev., sec. 102; 2 T. R. 482; Hobart's Rep. 284; Com. Dig., Action, Assumpsit A, 1. C; Cro. Ch. 415; 1 Cranch 332; 4 Cranch 239; 19 Johns. 205; 1 Dall. 208; 2 Fairfield 182; 3 Shep. 285; 10 Mass. 238; 14 Mass. 95; 4 Pick. 114; 9 Pick. 298; 21 Pick. 417; 6 N. H. 300; 31 N. H. (11 Fost.) 499. As to that part of the account which accrued on the 1st day of May, 1855, he contended that the action was prematurely brought; and as to the rent, he claimed that the defendant had the right, under the contract, to deduct the entire rent for the year from the amount of work done, before any liability was incurred to pay in money.

Knowlton *v.* Tilton.

SAWYER, J.   The contract under which that part of the labor was performed to which the case relates, is under seal.   In general, debt or covenant is the proper form of action for enforcing the payment of money agreed to be paid by such contract.   Assumpsit cannot be maintained for its recovery unless there is a subsequent agreement, founded upon some new consideration, to pay the debt or perform the contract, or its terms are varied by a subsequent simple contract, or other proceedings, constituting an abandonment or waiver of its provisions, such that the law may imply a promise independent of that expressed in the sealed instrument.   1 Ch. Pl. 94–96 ; *Hill* v. *Green,* 4 Pick. 114 ; *Lattimore* v. *Harsen,* 14 Johns. 330 ; *Dearborn* v. *Cross,* 7 Cow. 48 ; *Lawrence* v. *Dole,* 11 Vt. 549.   The trial proceeded upon the ground that there was no evidence before the jury of such waiver, abandonment, or alteration of the original contract, and it was held by the court that none such was necessary.   The report of an auditor is, by the statute, made evidence to the jury in support of the claim found due in the report.   When the plaintiff had introduced that to the jury, it was unnecessary for him to proceed farther in support of his case, although it might be made to appear that the claim found due by the auditor was for labor and services rendered under a special contract, under seal.   The statute making the report evidence implies that, in the absence of all conflicting evidence, it is sufficient to establish every fact material to the proof of the claim, and among them, if that is material, that of a rescinding, waiver or abandonment of the contract.   If the ruling of the court could be understood to have been nothing more than that, when the report was given in evidence, the plaintiff's case was maintained without specific proof of the waiver beyond what is furnished by the report itself, the ruling might well be sustained.   So understood, the ruling would have left the defendant at liberty to invalidate the report as evidence in

this particular, by the testimony of the auditor, or other competent proof, showing that he did not arrive at his result by finding that there had been a waiver, but by holding that it was immaterial whether there had been or not, or to control it by an overbalance of testimony, if he in fact acted upon the view that there had been such waiver. The ruling cannot be understood as thus limited. The exception taken by the defendant may fairly be considered to raise the question whether evidence as to the waiver of the contract was material. By the ruling, he was precluded from making an issue to the jury as to the waiver upon which depended the question whether the action, in its present form, could or could not be maintained.

As to the second exception, by the terms of the agreement the defendant was to pay whatever might be due for painting on the first day of May. The action was commenced on that day. The ruling of the court upon the question whether a demand was necessary, qualified as it was at the first view, would seem to have left the enquiry open to the defendant whether, in fact, a demand was made, but at the same time the court ruled that the question was immaterial, by holding that the action was well brought without a demand. The ruling that it was immaterial whether a demand was or not made, was correct; not, however, because the action brought on the first day of May may be maintained as well without it as with it, as to the work agreed to be paid for on that day, but because it cannot be maintained as to that work, even with a demand.

In the case of negotiable securities, the rule is well established that suits upon them may be commenced on the last day of grace, if preceded by a demand made on that day. *Leftly* v. *Mills*, 4 T. R. 170; *Shed* v. *Brett*, 1 Pick. 401; *Bank* v. *Cutter*, 3 Pick. 414; *Staples* v. *Bank*, 1 Met. 43; *Greeley* v. *Thurston*, 4 Me. (Greenl.) 479.

But the case of such commercial securities is held to be an exception to the general rule which governs in all other classes of contracts—which rule is, that the promissor, in a contract for the payment of money on a designated day, has the whole of that day in which to pay it; and no cause of action arises until it has fully expired, even upon demand made on that day. *Webb* v. *Fairmaner*, 3 Mees. & Wels. 474; *Harris* v. *Blen*, 16 Me. 175, and cases above cited. The contract being to pay on that day, the suit is premature, if, when brought, any portion of the day remains in which the payment may be made according to the terms of the contract. The ruling of the court upon this point, that the action was well brought, without demand, must be understood to assume that the contract was subsisting, and the suit brought to enforce payment according to its terms for work done in pursuance of it. There was no breach of the contract in this particular until the first day of May had elapsed.

As to the third exception, the court also erred in the construction given to the contract, as to the time when the rent, payable in painting, became due. There being no time limited in the contract for doing the work in payment of the rent, the law implies that it is to be done on request, within such time as may be held reasonable, upon a view of the nature and subject matter of the contract, and all the circumstances of the case. Chit. on Con. 730, (n. 1), and cases there cited. The shop was leased to the plaintiff for a year, to be used by him as a painter's shop. The reasonable inference is that the parties contemplated that the work should be done at the shop, and during the term for which it was leased. The defendant cannot be supposed to have contracted that he would refrain from calling upon the plaintiff during the year to paint his carriages, on account of the rent, and at its expiration to transport them to his shop elsewhere, wherever that might happen to be, for that purpose; nor that he would pay

Knowlton *v*. Tilton.

cash for the large amount of painting for which he might have occasion to call upon the plaintiff, down to the first of November, without deduction on account of the rent, and take his chance of having carriages ready for the painter's work, to the full amount of the rent, within the thirteen days between that and the end of the term. The fair understanding of the agreement is, that the plaintiff was to paint the defendant's carriages and sleighs as they were brought to the shop during the year, at the various prices specified, and to receive his pay for what might be due on this account, in cash, on the first days of the several months mentioned—the amount thus due being found by deducting, from the whole amount of work which had been done on each of these days, so much of the rent as had then accrued, at the rate of forty dollars for the year. The instruction to the jury, that the rent was not due until the end of the year, also assumes that the contract was subsisting. There is evidence in the case tending to show that, by mutual consent, the contract was abandoned at some time between the 21st of April and the 17th of May. This was not, however, made a question to the jury. The fact that the defendant was in possession of the shop on the 17th of May, if unexplained, might warrant the jury in finding that so far as the contract remained executory at that time, it was abandoned by mutual consent. If such were the facts, substantial justice may have been done to the defendant by allowing him only the twenty dollars on account of the rent. But the defendant claimed the whole rent for the year, as the amount of the deduction proper to be made, and he had the right to that deduction, unless such abandonment of the contract was found by the jury. The verdict must be set aside, and a

*New trial granted.*